UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                    :

IN RE WORLD TRADE CENTER    :  **OPINION AND ORDER**
DISASTER SITE LITIGATION       :  **DENYING MOTION FOR**
                                                    :  **INTERLOCUTORY APPEAL**
                                                    :  **AND ASSERTING CONTINUING**
                                                    :  **JURISDICTION**
                                                    :
                                                    :  21 MC 100 (AKH)
                                                    :
------------------------------------------------------X

ALVIN K. HELLERSTEIN, U.S.D.J.:

       I consider in this opinion whether Defendants' filing of a pre-final judgment notice of appeal from my order denying various immunity-based motions divests this Court of jurisdiction to conduct further proceedings. I consider also Defendants' motion asking that I certify the same order for interlocutory review.

       On October 17, 2006, I denied Defendants' motions for judgment on the pleadings and for summary judgment. See In re World Trade Ctr. Disaster Site Litig., 456 F. Supp. 2d 520 (S.D.N.Y. 2006) (hereinafter "In re WTC Disaster Site Litig." or "Order of October 17, 2006"). I held that the immunities claimed by the Port Authority of New York and New Jersey, the City of New York, and the contractors it had engaged, pursuant to the New York State Defense Emergency Act ("SDEA"), N.Y. Unconsol. Law § 9193 (McKinney 2006); New York State and Local Natural Disaster and Man-Made Disaster Preparedness Law ("Disaster Act"), N.Y. Exec. Law §§ 20 to 29-g (McKinney 2006); the Stafford Act, 42 U.S.C. § 5148, and other sources, required fact-intensive analyses and a fuller record than that which was presented by Defendants' motions. I ordered further pretrial proceedings to develop an appropriate record for subsequent motions, or trial.

       Defendants now seek to appeal that order. On November 15, 2006, Defendants filed a motion asking me to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). A

day later, on November 16, 2006, Defendants filed a notice of appeal. In an accompanying letter, Defendants asserted that their appeal was of right, pursuant to 28 U.S.C. § 1291 and the collateral order doctrine, and that the filing of the notice of appeal ousted my jurisdiction to conduct further pretrial proceedings. In light of proceedings already scheduled to advance these cases to their next stage and the intense public interest in assuring that the cases continue to advance towards resolution, and consistent with my view that Defendants' efforts to pursue an immediate interlocutory appeal lack merit, I issued an order provisionally denying Defendants' motion for interlocutory review and rejecting Defendants' assertion that the district court was ousted of jurisdiction. I stated that an opinion and order would soon follow. See Summary Order of Nov. 27, 2006. Defendants asked to brief the issue first, and plaintiffs responded similarly. I agreed to defer my rulings in order to consider their briefs.

I hold, following full consideration of Defendants' arguments, that their notice of appeal is legally ineffective to divest the district court of its jurisdiction. Defendants' motion to certify my Order of October 17, 2006 for interlocutory review is denied.

## Background

The plaintiffs in these cases claim to have suffered damage to their respiratory systems and other illnesses from the noxious environment that pervaded the World Trade Center site while they worked to clear debris from the site between September 11, 2001 and June, 2002. Plaintiffs sued the City of New York, alleging that its Department of Design and Construction took control of the site, engaged contractors, and supervised the clean-up operations, but failed to provide adequately for the safety of workers engaged in the clean-up operations. Plaintiffs also sued the contractors for whom they worked and who were involved in the operation. The Port

Authority of New York and New Jersey, as the owner of the site and because of alleged other involvements, was also sued, as were many other defendants.

The City, the contractors whom it engaged, and the Port Authority alleged affirmative defenses, among them, that they were immune to suit because of the State and federal laws mentioned previously. Since the defenses raised issues of fact, and on consent of the parties, I ordered discovery proceedings limited to facts relevant to the defenses, and set a motions and briefing schedule to enable me to determine the force and validity of the defenses.

Following consideration of the parties' submissions, I ruled that Defendants, although potentially entitled to immunity, could not claim it in blanket and absolute fashion. See generally In re WTC Disaster Site Litig., supra. I interpreted the SDEA to require consideration of various fact-intensive criteria, among them whether Defendants acted in "good faith," id. at 553, and held that the defense of immunity was not susceptible of decision on motion for judgment on the pleadings, id. at 556. Similarly, under the Disaster Act "specific actions have to be evaluated according to time, place and necessity," requiring the development of a factual record. Id. at 557–58. And, similarly, I held that the factual record was not sufficiently developed to support motions based on state common law immunities. Id. at 559. I held that Defendants were not entitled to derivative federal immunity on motion for summary judgment because genuine issues of material fact remained relating to the extent to which Defendants adopted federal standards and protocols. Id. at 566. I held that the Stafford Act did not apply to non-federal actors and therefore did not apply to Defendants in this case. Id.

Defendants seek now to put an end to pretrial proceedings, in favor of review by the United States Court of Appeals for the Second Circuit. By motion, Defendants seek this

3

Court's certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[1]  Separately, Defendants claim that they are entitled, of right, to an immediate appeal under the collateral order doctrine and that their appeal to the Court of Appeals ousts this Court of jurisdiction to conduct further pretrial proceedings.

## Discussion

**I.    Appeal Before Final Judgment**

    A.  Final Judgment and the Collateral Order Doctrine

The courts of appeals have jurisdiction of appeals from all "final decisions" of the district courts of the United States, except where a direct review may be had in the Supreme Court.  28 U.S.C. § 1291.  "The requirement of finality precludes [appellate] consideration of decisions that are subject to revision, and even of 'fully consummated decisions that are but steps towards final judgment in which they will merge.'"  Behrens v. Pelletier, 516 U.S. 299 (1996) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)).  The collateral order doctrine identified with Cohen, supra, is a "practical construction" of the final judgment rule, which "accommodates a 'small class' of rulings, not concluding the litigation, but conclusively resolving 'claims of right separable from, and collateral to, rights asserted in the action.'"  Will v. Hallock, 126 S. Ct. 952, 957 (2006) (quoting Cohen, 337 U.S. at 546).

To appeal an order before final judgment, three "stringent" conditions must be satisfied:  the order must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from final judgment."  Id. (quotations and brackets omitted).  The scope of decisions that meet these conditions must remain narrow and "never be allowed to swallow

---

[1] The Port Authority of New York and New Jersey does not join Defendants' motion for certification pursuant to 28 U.S.C. § 1292(b).

4

the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." Id. at 958 (quoting Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868 (1994)).

In addition to satisfying the conditions enumerated in Hallock, the defendant must show that his claim to right of immediate appeal is supported by undisputed facts. An immediate appeal under the collateral order doctrine is not available where material facts are in genuine dispute:

> Under the collateral order doctrine … the denial of a qualified-immunity-based motion for summary judgment is immediately appealable to the extent that the district court has denied the motion as a matter of law, although not to the extent that the defense turns solely on questions of fact.

Papineau v. Parmley, 465 F.3d 46, 54 (2d Cir. 2006); see also Salim v. Proulx, 93 F.3d 86, 90 (2d Cir. 1996) ("An appeal is available … where the defendant contends that on stipulated facts, or on the facts that the plaintiff alleges are true … the [Harlow] immunity defense is established as a matter of law."). If the affirmative defense put forth by a defendant as his basis for claiming a right to an immediate appeal clearly cannot be supported by the undisputed facts, his claim to that right is not colorable.

In theory, any defendant who loses a motion in support of an affirmative defense can seek to appeal before final judgment, based on an argument that his right to avoid trial has been lost. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (establishing right to avoid trial satisfies all three conditions for immediate appeal under collateral order doctrine). Thus "those seeking immediate appeal … naturally argue that any order denying a claim of right to prevail without trial" violates that right. Hallock, 126 S. Ct. at 958. But "this generalization is too easy to be sound;" therefore, in addition to satisfying these conditions, defendants asserting a right to appeal before final judgment under the collateral order

5

doctrine must demonstrate that the appeal would vindicate "particular value[s] of a high order," such as "honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, [or] mitigating the government's advantage over the individual." Id. at 958. "Otherwise, almost every pretrial or trial order might be called 'effectively unreviewable' in the sense that relief from error can never extend to rewriting history." Id. Thus the collateral order doctrine does not extend to every claim "that the district court lacks personal jurisdiction, that the statute of limitations has run … that no material fact is in dispute and the moving party is entitled to judgment as a matter of law, or merely that the complaint fails to state a claim." Digital Equip., 511 U.S. at 873. "Such an expansive construction of the collateral order doctrine 'would leave the final order requirement of § 1291 in tatters.'" City of New York v. Beretta U.S.A. Corp., 234 F.R.D. 46, 52 (E.D.N.Y. 2006) (Weinstein, J.) (quoting Hallock, 126 S. Ct. at 958).

       The number of exceptions to the final judgment rule must be rigorously limited, else the final judgment rule may become enervated, and the dockets of the courts of appeals, swamped. In Cohen itself, a shareholder's derivative action, the defendant corporation appealed from the district court's order denying its motion to require that the plaintiff post a security bond covering the cost of litigation in the event that plaintiff did not prevail. See 337 U.S. at 544–46. Postponing appeal until after final judgment would have denied the defendant its statutory right to obtain a security bond "at any stage of the proceedings before final judgment," id. at 545 n.1 (quoting Ch. 131 of N.J. Laws of 1945), and any opportunity to obtain meaningful review of an order denying that right. The Supreme Court holding that the right asserted was "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," id. at 546, allowed immediate appeal, creating

6

what became known as the collateral order doctrine. Since Cohen, the Court has enlarged the right of immediate appeal to a small class of cases where immediate appeal was necessary to vindicate fundamental constitutional rights—for example, a State's Eleventh Amendment right not to be sued, see Puerto Rico Aqueduct, supra; or an individual's Fifth Amendment right not to be prosecuted twice for the same crime, see Abney v. United States, 431 U.S. 651 (1977); or the right of a government official to do his job without being sued for discretionary acts that do not violate a clearly established right. See Mitchell v. Forsyth, 472 U.S. 511 (1985). Where there were no such fundamental concerns, e.g. Mitchell, or clear statutory texts, e.g. Cohen; Puerto Rico Aqueduct, the Supreme Court declined to expand the collateral order doctrine. See Hallock, supra (order denying claim to "judgment bar" under Tort Claims Act); Digital Equip. Corp., supra (order granting motion to vacate settlement agreement); Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368 (1981) (order denying motion to disqualify counsel). The case at bar exceeds by far the narrow exceptions to the final judgment rule permitted by the Supreme Court.

Because issues properly raised under the collateral order doctrine are by definition "completely separate from the merits of the action," an appeal of an order pursuant to the doctrine does not "generally divest the district court of jurisdiction over issues not under consideration in the appeal." Beretta, 234 F.R.D. at 50. Such an order is appealable precisely "because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." Cohen, 337 U.S. at 546–47. However, in the Eleventh Amendment, double jeopardy, and government officer cases previously cited, an immediate appeal is necessary to vindicate the right not to be sued in derogation of fundamental constitutional guarantees. Necessarily, the right cannot be vindicated if the district court

7

continues its proceedings.

Again, the right of immediate appeal becomes a tempting procedure for a disappointed litigant, for the simple act of filing a notice of appeal gives rise to an argument that all proceedings in the district court must stop. In several circuits, the district court may certify the gambit as "frivolous" and continue pretrial and trial proceedings. See Apostol v. Gallion, 870 F.2d 1335 (7th Cir. 1989); United States v. Dunbar, 611 F.2d 985 (5th Cir. 1980). "Frivolity" has not been set as the standard in the Second Circuit. See Beretta, 234 F.R.D. at 51–52; Bean v. City of Buffalo, 822 F. Supp. 1016, 1019 (W.D.N.Y. 1993).

Defendants at bar seek to equate the notice of appeal they filed here with the narrow class of exceptions previously discussed. They argue that the City and its contractors responded to an attack on our nation, and that if they are denied an immediate appeal, national security will inexorably be weakened. They seek, in effect, to carve out a 9/11 exception to stand with the delimited class of exceptions previously cited. The events of 9/11, however tragic, do not furnish Defendants with a proper basis to invoke the collateral order doctrine. Nor can Defendants escape the requirement that the district court must have decided the issue for appeal "finally," upon an undisputed factual record. See Papineau, 465 F.3d at 54; Apostol, 870 F.2d at 1339. Defendants' position, that they are entitled to an immediate appeal on the basis of the existing factual record, unclear and disputed, and a novel and expanded exception to the rule of finality, is without merit. In terms of Apostol and Dunbar, it borders on frivolous, if not frivolous.

### B. New York State Defense Emergency Act Immunity

Defendants claim immunity pursuant to the New York State Defense Emergency Act. Contrary to Defendants' argument, however, nothing in the text of the SDEA provides

absolute immunity from suit. The SDEA shelters parties from liability if they present sufficient evidence of their good faith, and that cannot be done by mere allegation in a pleading.

The SDEA provides that "[certain entities] in good faith carrying out, complying with or attempting to comply with any law, any rule, regulation or order duly promulgated [and] relating to civil defense … shall not be <u>liable</u> for any injury or death to persons or damage to property as the result thereof." SDEA § 9193(1) (emphasis added). In contrast with the Eleventh Amendment, which prohibits "any suit in law or equity" against a State, and in contrast with the Fifth Amendment, which provides that no person shall be "twice put in jeopardy," the SDEA speaks of a defense against liability, not a defense against lawsuits. The difference is significant. In enacting the SDEA, the New York legislature created a statutory affirmative defense, like other affirmative defenses to liability. <u>See</u> N.Y. Gen. Oblig. Law § 5-701(a)(1) (statute of frauds); N.Y. C.P.L.R. § 214-c (statute of limitations for exposure to substances). It did not create a prohibition against being sued.

The SDEA's requirement that "good faith" be shown further illustrates the point. Defendants must plead and prove the good faith of their conduct, ultimately, if issues of fact exist, to a jury. <u>See</u> <u>Jones v. Gray</u>, 267 A.D. 242 (N.Y. App. Div., 3d Dept. 1943). In <u>Jones</u>, the Appellate Division interpreted the New York State War Emergency Act ("WEA"), the precursor to the SDEA, with a virtually identical liability provision. <u>See</u> <u>id.</u> at 244. Defendant Gray in the case was an air raid warden who, upon receiving instructions to report to his post in the town of Glenford, loitered in a store for about fifteen minutes before departing. During the delay, Gray assembled a small group of people to accompany him to his post to witness "a real blackout." <u>Id.</u> at 246. Once in his car, Gray drove recklessly and in violation of blackout regulations, and collided with plaintiff Jones, killing both and several passengers. <u>See</u> <u>id.</u> at 246–47. Jones's

9

executor sued and prevailed; Gray's executor appealed.

The only substantial question presented by these facts for the Appellate Division to resolve was whether Gray had acted in "good faith" within the meaning of the WEA. See id. at 245. Although the court did not define "good faith" explicitly, it rejected "[d]efendant's contention that … good faith and honest intention must be conclusively presumed as a matter of law from the single fact alone that at the time of the collision [defendant] was proceeding in the general direction of the air raid post." Id. at 247. "Obviously," the court stated, whether Gray was acting in good faith "was a question of fact for the jury." Id.; see also Smith v. Orangetown, 57 F. Supp. 52, 55 (S.D.N.Y. 1944) ("burden is upon the defendant under the statute to prove good faith").

Defendants argue that they must be given the right to an immediate appeal, else they will have to prove good faith in relation to each and every plaintiff, and the standard of good faith will become indistinguishable from negligence. That is not so. It is premature to know how Defendants will seek to prove that they acted in good faith, but patterns of conduct, precautions generally observed, advice sought and instructions given, supervision standards offered and practiced, and other such general practices and polices can be proved without getting into the nitty-gritty of each case, or mixing good faith and negligence. Defendants' arguments are without merit.

    C. New York State Disaster Act Immunity

The New York State and Local Natural Disaster and Man-Made Disaster Preparedness Law ("Disaster Act"), N.Y. Exec. Law §§ 20 to 29-g, provides in relevant part that a "political subdivision shall not be liable for any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of any officer or employee in carrying out the provisions of this section." Disaster Act § 25(5). The provision

limits the scope of its coverage "to those actions which are necessary to cope with the disaster." In re WTC Disaster Site Litig., 456 F. Supp. 2d at 557. Like the SDEA, therefore, the Disaster Act provides for immunity from liability under certain circumstances, but it does not provide a right not to be tried. See Daly v. Port Auth., 793 N.Y.S.2d 712, 719–21 (N.Y. Sup. Ct. 2005). Furthermore, Disaster Act § 25(5) applies only to political subdivisions, and not to private entities. See id. at 720; Fox v. Cheminova, Inc., 387 F. Supp. 2d 160, 170 (E.D.N.Y. 2005) ("New York law only provides for State—and not private parties or corporations—immunity from liability during emergency situations").

To prevail on the basis of the Disaster Act, Defendants must plead and prove that the acts and omissions alleged to have been wrongful, causing injury, were discretionary, legal, and necessary to cope with the disaster. See Daly, 793 N.Y.S.2d at 721 ("Neither the City nor any other entity has discretion to violate an applicable statute."). To determine whether the City's actions come within the protection of § 25(5), they must be evaluated in the context of time, place, necessity, and the demands of applicable laws. See In re WTC Disaster Site Litig., 456 F. Supp. 2d at 557. These are not issues that can be resolved from pleadings. Defendants have no appeal of right.

    D. New York State Common Law Immunity

"When a municipality is engaged in a governmental function undertaken for the protection and safety of the public pursuant to the general police powers, it generally will not be held liable for the negligent performance of those functions unless it can be shown that a special relationship exists between the injured party and the municipality." Lemery v. Village of Cambridge, 290 A.D.2d 765, 766 (N.Y. App. Div. 2002) (citations and internal quotations omitted). Here, Plaintiffs have alleged such a relationship in their pleadings; namely, that the City had a duty to the workers it caused to be hired, and whom it supervised, to assure that the

11

workplace was reasonably safe, and that reasonable protections against a toxic environment were in force. Defendants are not entitled to judgment on the pleadings on the basis of state common law immunity, as a developed factual record is required. See In re WTC Disaster Site Litig., 456 F. Supp. at 559 (quoting Weiner v. Metropolitan Transp. Auth., 55 N.Y.2d 175, 182 (N.Y. 1982) ("It is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred.")).

E. Derivative Federal Immunity

Defendants moved for summary judgment pursuant to Rule 56, Fed. R. Civ. P., asserting immunity under the doctrine of derivative federal immunity as it is stated in Boyle v. United Techs. Corp., 487 U.S. 500 (1988) and Yearsley v. W.A. Ross Const. Co., 309 U.S. 18, 21 (1940). The Port Authority, but not the other defendants, seeks an immediate appeal of my order denying its motion for summary judgment on derivative federal immunity grounds. With respect to Defendants' derivative federal immunity claim, I held that:

> To the extent that reliance and adoption of federal standards and protocols is shown, and the Defendants' conduct is tantamount to actions by the federal authority, the Defendants enjoy the same immunity as would be conferred on discretionary acts and decisions of federal officers and employees. At this point, however, the record is not sufficiently clear to enable the court to demark the boundary between federally instructed discretionary decisions, and those made by the various Defendants. There are material, triable issues of fact that will have to be resolved. At this point in the pre-trial proceedings, the Motions for Summary Judgment are denied.

In re WTC Disaster Site Litig., 456 F. Supp. 2d 566.

Clearly, the facts upon which the Port Authority's claim depends are in genuine dispute; therefore an immediate appeal under the collateral order doctrine is not available.

12

Papineau, 465 F.3d at 54. Unless Defendants accept the facts as determined in my order, or as alleged in Plaintiffs' complaint, they are not entitled to an immediate appeal before final judgment. See Skehan v. Village of Mamaroneck, 465 F.3d 96, 104–05 (2d Cir. 2006); Salim, 93 F.3d at 90. Defendants have not done that; the facts are hotly contested. There are no agreed or stipulated facts at this point to support the Port Authority's position, or that of any other defendant.

The Port Authority cannot claim derivative federal immunity unless it "was working pursuant to the authorization and direction of the federal government." In re WTC Disaster Site Litig., 456 F. Supp. 2d at 560 (citing Yearsley v. W.A. Ross Const. Co., 309 U.S. 18, 21 (1940)). In my order denying summary judgment, I held that the extent to which Defendants, including the Port Authority, acted pursuant to the direction of the federal government could not be determined on the basis of the existing record, and that triable issues of material fact exist. See id. at 563–66. Because derivative federal immunity depends on factual determinations—who did what, according to whose instructions, and the scope of those instructions—the Port Authority is not entitled to immediate appeal. See Johnson v. Jones, 515 U.S. 304, 319–20 (1995) ("A defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."); Behrens v. Pelletier, 516 U.S. 299, 312–13 (1996) ("Determinations of evidentiary sufficiency at summary judgment are not immediately appealable . . . if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred . . . ."); see also Palmer v. Goss, No. 02 Civ. 5804, 2003 U.S. Dist. LEXIS 19895 (S.D.N.Y. 2003) (holding that defendants' pre-final-judgment appeal turned on question of fact and therefore did

not divest district court of jurisdiction).

    F.  <u>Stafford Act Immunity</u>

Defendants in this case appear to be the first to claim <u>derivative</u> immunity under the Stafford Act since it was enacted in 1974. The plain language of the relevant section, 42 U.S.C. § 5148 addresses federal government agencies only, and there is no precedent in the courts of appeals or Supreme Court to support their novel construction of the Act. There is no basis for immediate appeal.

## II.   Interlocutory Appeal under 28 U.S.C. § 1292(b)

    A.  <u>Standard for Determining Whether to Certify an Order for Interlocutory Appeal</u>

For the same reasons that federal practice disfavors collateral appeals, federal practice strongly disfavors discretionary interlocutory appeals. Appeals from interlocutory orders prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions. See <u>Koehler v. Bank of Bermuda Ltd.</u>, 101 F.3d 863, 865 (2d Cir. 1996); <u>In re September 11 Litig.</u>, No. 21 MC 97, 2003 U.S. Dist. LEXIS 17105 (S.D.N.Y. 2003) (denying motion to certify for interlocutory review). In federal courts, the district judge may revisit earlier decisions and reconsider their wisdom in light of factual and procedural developments in pretrial and trial proceedings. <u>DiLaura v. Power Authority of State of N.Y.</u>, 982 F.2d 73, 76 (2d Cir. 1992) (doctrine of law of the case does not limit court's power to reconsider its own decisions prior to final judgment, particularly in light of the availability of new evidence). Such flexibility, and the sound jurisprudence that it promotes, is compromised by undue liberality in allowing interlocutory appeals. See <u>In re Doe</u>, 546 F.2d 498, 502 (2d Cir. 1976) (refusing to review the denial of a motion to enjoin a grand jury investigation where, in the district judge's discretion, a colorable basis existed and alternative remedies may be available

14

later in the case).

28 U.S.C. § 1292(b) thus provides for <u>limited</u> interlocutory appeals. A district judge may certify an order for interlocutory appeal if the "order involves a controlling question of law, as to which there is substantial ground for difference of opinion," and where an immediate appeal may "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b).  Interlocutory appeal "is a rare exception" where, in the discretion of the district judge, it "may avoid protracted litigation."  <u>Koehler v. Bank of Bermuda Ltd.</u>, 101 F.3d 863, 865–66 (2d Cir. 1996).  The assessment must be carefully made, to avoid too many appeals by too many disappointed litigants who could argue that a different ruling by the district judge would end a litigation and save much expense.  <u>See</u> <u>SEC v. Credit Bancorp, Ltd.</u>, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000).  Thus, the district judge has "unfettered discretion to deny certification of an order for interlocutory appeal even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met," <u>Gulino v. Board of Education</u>, 234 F. Supp. 2d 324, 325 (S.D.N.Y. 2002) (quoting <u>Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.</u>, 71 F. Supp. 2d 139, 162 (E.D.N.Y. 1999)).

    B.  <u>Defendants' Motion to Certify Order of October 17, 2006 for Interlocutory Appeal</u>

Defendants' motion to certify for interlocutory appeal my Order of October 17, 2006, denying their motions for judgment on the pleadings and for summary judgment, is denied. The order resolves a mixed question of law and fact—whether Defendants are entitled to immunity at this stage of the litigation on the basis of the existing factual record—by ruling that they are not.  <u>See</u> <u>In re WTC Disaster Site Litig.</u>, <u>supra</u>.  The order does not resolve the ultimate question of whether Defendants are entitled to the immunities they claim.  Because the question of whether Defendants are entitled to immunity cannot be answered without consideration of a

15

developed record, I find that an interlocutory appeal will not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Indeed, substantial delay is a likely consequence of interlocutory appeal at this stage in the litigation. Such a delay would be unconscionable, given the intense public interest in reaching an expeditious resolution to this litigation.

## Conclusion

For all of the foregoing reasons, I hold that this Court has continuing jurisdiction over this case; Defendants' appeal of my order denying their motions for judgment on the pleadings and for summary judgment does not divest the Court of jurisdiction. Defendants' motion to certify the order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is denied.

SO ORDERED.

Dated: January __, 2007
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge